## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

DEVONTE PRYOR,

       *Plaintiff*,

*v.*

COMMISSIONER OF SOCIAL SECURITY,

       *Defendant*.

_____/

CASE NO. 14-13325

DISTRICT JUDGE DENISE PAGE HOOD
MAGISTRATE JUDGE PATRICIA T. MORRIS

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON CROSS MOTIONS FOR SUMMARY JUDGMENT (Docs. 13, 14)

### I.    RECOMMENDATION

In light of the entire record in this case, I suggest that substantial evidence supports the Commissioner's determination that Pryor is not disabled. Accordingly, **IT IS RECOMMENDED** that Pryor's Motion for Summary Judgment (Doc. 13) be **DENIED** and that the Commissioner's Motion for Summary Judgment (Doc. 14) be **GRANTED**.

### II.    REPORT

#### A.    Introduction and Procedural History

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to this magistrate judge for the purpose of reviewing a final decision by the Commissioner of Social Security ("Commissioner") denying Plaintiff's claims for the Supplemental Security Income ("SSI") program of Title XVI, 42 U.S.C. § 1381 et seq. Title II. (Doc. 2; Tr. 1-3). The matter is currently before the Court on cross-motions for summary judgment. (Docs. 13, 14).

Plaintiff Devonte Pryor was twenty-two years old when he applied for benefits on April 13, 2012, alleging that he became disabled on April 1, 2012. (Tr. 129-34). This application was denied on July 12, 2012. (Tr. 70-81). Pryor requested a hearing before an Administrative Law Judge ("ALJ"), which took place before ALJ David A. Mason, Jr. on January 11, 2013. (Tr. 23-69). Pryor, who was represented by attorney Barry Keller, testified, as did vocational expert ("VE") John Stokes. (*Id*.). On May 31, 2013, the ALJ issued a written decision in which he found Pryor not disabled. (Tr. 7-19). On June 26, 2014, the Appeals Council denied review. (Tr. 1-4). Pryor filed for judicial review of that final decision on August 26, 2014. (Doc. 1).

**B.    Standard of Review**

The district court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). The district court's review is restricted solely to determining whether the "Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Sullivan v. Comm'r of Soc. Sec.*, 595 F. App'x 502, 506 (6th Cir. 2014) (internal citations omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotations omitted).

The Court must examine the administrative record as a whole, and may consider any evidence in the record, regardless of whether it has been cited by the ALJ. *See Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989). The Court will not "try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). If the

2

Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Id*. at 286 (internal citations omitted).

### C.     Framework for Disability Determinations

Under the Act, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means the inability

> to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI). The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two:  If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three:  If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.
>
> Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five:  Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that

3

> plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920. *See also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by [his or] her impairments and the fact that she is precluded from performing [his or] her past relevant work." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). The burden transfers to the Commissioner if the analysis reaches the fifth step without a finding that the claimant is not disabled. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [the claimant] could perform given [his or] her RFC [residual functional capacity] and considering relevant vocational factors." *Rogers*, 486 F.3d at 241 (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g)).

### D.   ALJ Findings

Following the five-step sequential analysis, the ALJ found Pryor not disabled under the Act. (Tr. 19). The ALJ found at Step One that Pryor had not engaged in substantial gainful activity since April 13, 2012, the application date. (Tr. 12). At Step Two, the ALJ concluded that Pryor had the following severe impairments: "[s]tatus post torn left anterior cruciate ligament (ACL), left knee arthroscopy, and right knee arthroscopy and reconstruction." (Tr. 13). At Step Three, the ALJ found that Pryor's combination of impairments did not meet or equal one of the listings in the regulations. (*Id.*). The ALJ then found that Pryor had the residual functional capacity ("RFC") to perform sedentary work, except that Pryor

> can lift ten pounds occasionally, and less than ten pounds frequently. He can stand/walk two hours and sit six hours in an eight-hour

4

> workday. The claimant is limited to occasional use of the left lower extremity for foot controls. He can never use ladders, ropes, or scaffolds, but may occasionally use ramps, stairs, balance, stoop, kneel, crouch, or crawl.

(Tr. 13-17). At Step Four, the ALJ noted that Pryor has no past relevant work. (Tr. 17-18). At Step Five, the ALJ found that a significant number of jobs existed which Pryor could perform despite his limitations. (Tr. 18-19). As a result, the ALJ found Pryor not disabled under the Act. (Tr. 19).

### E.   Administrative Record

#### 1.   Medical Evidence

As discussed in greater detail in the analysis below, Pryor does not argue that the ALJ erred in his interpretation of any of the medical evidence of record. (Doc. 13 at 7-8). It is thus unnecessary for the Court to discuss the medical evidence which details the history of his alleged disability. *See Salas v. Comm'r of Soc. Sec.*, No. 1:11 CV 1511, 2012 WL 3283415, at *1 (N.D. Ohio July 26, 2012) (finding that a Social Security claimant who alleged only Step Five errors "waived all arguments about the rest of the ALJ's decision, including Plaintiff's residual functional capacity. . . . Thus, the Court need not discuss the medical history that caused Plaintiff to allege disability."). Nevertheless, the Court will highlight some of the most relevant portions of Pryor's medical records.

Pryor alleges that he suffered a motor vehicle accident on May 2, 2010, though detailed records from the treatment immediately following that accident are not available. (Doc. 13 at 4; Tr. 219). Pryor underwent surgical intervention to repair his knee in May, June, July, and October of 2010. (Tr. 247).

On July 9, 2011, Dr. Sadiq Haque noted some swelling in the left knee, which he was unable to remove through aspiration. (Tr. 246). Pryor reported some stiffness and pain, but felt that "he has a stable knee." (*Id.*).

On July 25, 2011, Dr. Benjamin Paolucci recorded that Pryor experienced "some difficulty with falling out of the knee and what [Pryor] describes as swelling of the knee. The patient does not have any discomfort but is actually playing basketball at times." (Tr. 242). Dr. Paolucci found an "obvious effusion of the left knee," but also noted that "the reconstruction appears to be intact." (*Id.*).

On September 12, 2011, Dr. Paolucci recorded that Pryor's left knee showed a "small tear of the anterior horn of the lateral meniscus and a tear of the posterior horn of the medial meniscus" along with "some changed noted in the collateral ligament, additionally, medially." (Tr. 241).

On October 17, 2011, Dr. Paolucci recorded that Pryor had not followed earlier advice to cease playing basketball, to wear his knee brace, and to start physical therapy. (Tr. 239). Pryor complained of weakness in his left knee, and requested an injection of Synvisc. (*Id.*). Despite these aggravating factors, Dr. Paolucci recorded only "some swelling which is minimal and evidence of flexion and extension deficits, which are very minimal," along with some "posterior laxity." (*Id.*).

On December 5, 2011, Dr. Paolucci noted that Pryor suffered some "difficulty in postoperative recovery with swelling and range of motion difficulties," and sometimes used a brace. (Tr. 237). Pryor reported "no pain," and stated that he was able to do exercises "with no problem." (*Id.*).

6

On January 23, 2012, Dr. Paolucci told Pryor that he "could do some straight ahead running." (Tr. 235). Pryor reported "minimal left knee discomfort" that was "much less than it was before." (Tr. 235).

On February 6, 2012, Dr. Paolucci recorded that Pryor was "doing well" following knee surgery, with "no evidence of any significant abnormality," but with "minimal effusion of the left knee." (Tr. 231).

On March 19, 2012, Dr. Daya Vora interpreted an MRI of Pryor's left knee, finding "post traumatic degenerative spurring" with "chondrocalcinosis" and "suspected intraarticular loose bodies." (Tr. 251).

On May 1, 2012, a physical therapy report found that Pryor was "using gym" and had "minimal deficits at this time." (Tr. 214). Pryor was also noted to use the gym in progress reports on April 19, 2012. (Tr. 217).

An April 10, 2012, physical therapy report recorded no difficulty or little difficulty walking on level surfaces and stairs, little difficulty lifting, squatting, and bending, and recorded no results with regard to driving, meal preparation, housework, prolonged standing, sitting, overhead reaching, and sleeping, apparently because Pryor suffered no difficulty in these respects or otherwise they were not goals of his treatment program. (Tr. 221). Pryor suffered more than minimal difficulty only in terms of "advanced gait," including running, jogging, and jumping, strength, and "home program performance." (*Id.*).

## 2.     Application Reports and Administrative Hearing

### A.     Pryor's Function Report

On May 24, 2014, Pryor completed a function report. (Tr. 187-194). Pryor there asserted that he is unable to work because "my knee is not stable for me to stand or sit very long." (Tr. 187). Regarding activities of daily living, Pryor asserted that he sits "in the bed with my leg prop [sic] up + ice on it." (Tr. 188). However, he also asserted that he takes care of his daughter. (*Id*.). Pryor stated that his illnesses prevent him from walking, running, playing basketball, climbing stairs, and playing with his daughter. (*Id*.). He experiences knee pain while sleeping and can only sleep on his back due to his knee pain. (*Id*.). He further asserted that he must sit in a chair to shower, cannot bend his left knee to use the bathroom, and cannot stand for extended periods. (*Id*.). He reported that he does not cook meals or perform chores because of difficulty standing and walking. (Tr. 189). He asserted that he does not go outside but rather stays "just in my bed," and props up his leg whenever possible. (Tr. 190). However, Pryor also inconsistently reported riding in a car when he does go out. (*Id*.). He asserted that he does no shopping, and that his mother handles such affairs for him. (*Id*.). Pryor asserted that he can walk for two minutes before requiring a ten to twenty-five minute rest. (Tr. 192). He further reported using crutches "all the time." (Tr. 193).

### B.     Pryor's Testimony at the Administrative Hearing

At the April 11, 2013, hearing before the ALJ, Pryor testified to working twenty to thirty hours per week during his period of alleged disability as part of a basketball work-study arrangement with his basketball coach at Marygrove College. (Tr. 29). Pryor asserted that he may have been able to perform the tasks involved in that position full time, such as handing out

jerseys and water, if he was offered the position. (Tr. 33-34). However, Pryor also asserted that his coach permitted some extraordinary accommodations which permitted him to put his leg up when necessary, and to take time off for physical therapy visits. (Tr. 36, 51). Pryor asserted that, as of the time of the hearing, he was able to drive, but only used his vehicle to commute to school and therapy sessions. (Tr. 41). However, he also testified to attending church services weekly. (Tr. 42). Pryor was enrolled in three on-campus classes at college as of the hearing, and drove to the hearing. (*Id.*). Pryor asserted that he was reliant upon financial assistance from his family and girlfriend, and was not employed as of the hearing. (Tr. 45). He also noted that he was mandated to pay child support, and pushed himself to work physical labor jobs to pay that expense. (Tr. 54).

When asked about hobbies, Pryor stated "basketball of course," but it was unclear from the context whether he meant playing or simply following that sport. (Tr. 42). Pryor also stated that he sometimes uses his computer, and takes trips with his basketball team exceeding 100 miles. (Tr. 43). Pryor also stated that he is able to feed, dress and bathe himself, and asserted that "the only limitation really I have is like going down the stairs," but that he is able to use stairs provided he can "hold on close to the railing." (Tr. 51). However, Pryor also testified that he experienced some knee stiffness, (Tr. 51), could stand for thirty minutes before swelling sets in (Tr. 52), and could sit for thirty minutes before his knee gets "stuck in that position" (*id.*). Regarding swelling in that knee, Pryor asserted that the swelling had not fully abated since his last surgery, and that if he stands for too long it will "swell up by itself." (Tr. 53). Regarding physical therapy, Pryor asserted that he was attending two three-hour sessions weekly as of the hearing. (Tr. 55). Pryor said that his leg pain rates at approximately seven out

9

of ten most of the time, but is reduced to four or five out of ten through the use of Vicodin. (Tr. 58).

Pryor testified that he can ambulate without the use of a cane, but does so with a limp. (Tr. 59). He asserted that he could walk about one quarter of one city block without a cane. (*Id.*). Pryor also said that he elevates and ices his leg throughout the day. (Tr. 60). When asked about the duration for which he could stand without use of a cane, Pryor asserted that he "never really tried to . . . [because] it can get fatigued fast just standing." (Tr. 62). Pryor asserted that he can lift approximately thirty pounds. (Tr. 61). Pryor also stated that he must elevate his leg above his heart while lying down, and at waist level while sitting, and that he elevates his leg for at least an hour per day. (Tr. 65-66).

## C.     The VE's Testimony at the Administrative Hearing

The ALJ then asked the VE a series of questions to determine Pryor's ability to perform work. With regard to skills which Pryor possessed from his prior employment, the VE testified that he retained the ability to perform work as a cashier. (Tr. 48). The ALJ then asked the VE to consider whether a hypothetical worker, who has the same education, age, and past work experience as Pryor, could perform competitive work. (Tr. 64). Specifically, the ALJ asked the VE to hypothesize a person who has the ability to perform sedentary work, and who is limited in the following manner:

> This person can lift ten pounds occasionally, [and] less than ten pounds frequently. This person can stand for two of eight hours. This person can . . . stand and walk for two of eight hours. The person can sit for six of eight hours. [This] person would be limited to occasional use of the left lower extremity for foot controls, occasional ramps and stairs, no ladders, ropes, or scaffolds. This person can occasionally balance . . . stoop . . . kneel . . . crouch . . .

> and . . . crawl. . . . [T]his person would need to alternate between
> sitting and standing every thirty minutes . . . but when they stand
> they would need the use of a cane to stand. . .  [with] the right
> dominant hand."

(Tr. 64). The VE testified that a claimant so limited would not be able to perform any competitive work, because the use of a cane would be work preclusive. (Tr. 65).

The ALJ then asked whether a worker who is similarly limited, but who does not require the use of a cane, would be able to perform competitive work. (*Id*.). The VE testified that such a worker could work as a cashier, check cashier, or auction clerk. (Tr. 48, 64). The VE was apparently unable to give specific numbers for those individual positions, but stated that "approximately 9,700 jobs [exist] in the Southeastern Michigan economy" with regard to the position of cashier generally. (Tr. 48-49).

Finally, the ALJ asked whether a hypothetical worker who was required to elevate their leg at waist height for two hours daily would be able to perform competitive work; the VE testified that such a restriction would be preclusive of competitive work. (Tr. 67).

### F.      Governing Law

The ALJ must "consider all evidence" in the record when making a disability decision. 42 U.S.C. § 423(d)(5)(B). The regulations carve the evidence into various categories, "acceptable medical sources" and "other sources." 20 C.F.R. § 404.1513. "Acceptable medical sources" include, among others, licensed physicians and licensed or certified psychologists. *Id.* § 404.1513(a). "Other sources" include medical sources who are not "acceptable" and almost any other individual able to provide relevant evidence. *Id.* § 404.1513(d). Only "acceptable medical sources" can establish the existence of an impairment. SSR 06-03p, 2006 WL

11

2329939, at *2. Both "acceptable" and non-acceptable sources provide evidence to the Commissioner, often in the form of opinions "about the nature and severity of an individual's impairment(s), including symptoms, diagnosis and prognosis, what the individual can still do despite the impairment(s), and physical and mental restrictions." *Id.* at *2. When "acceptable medical sources" issue such opinions, the regulations deem the statements to be "medical opinions" subject to a multi-factor test that weighs their value. 20 C.F.R. § 404.1527. Excluded from the definition of "medical opinions" are various decisions reserved to the Commissioner, such as whether the claimant meets the statutory definition of disability and how to measure his or her residual functional capacity. *Id.* at 404.1527(d).

The ALJ must use a six-factor balancing test to determine the probative value of medical opinions from acceptable sources. 20 C.F.R. § 404.1527(c). The test looks at whether the source examined the claimant, "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and specialization of the treating source." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). *See also* 20 C.F.R. § 404.1527(c). ALJs must also apply those factors to "other source" opinions. *See Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 540-42 (6th Cir. 2007); SSR 06-3p, 2006 WL 2329939, at *2.

Certain opinions of a treating physician, in contrast, receive controlling weight if they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and are "not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2). *See also Wilson*, 378 F.3d at 544. The only opinions entitled to dispositive

12

effect deal with the nature and severity of the claimant's impairments. 20 C.F.R. § 404.1527(d); SSR 96-2p, 1996 WL 374188, at *1-2. Therefore, the ALJ does not owe a treating opinion deference on matters reserved to the Commissioner. 20 C.F.R. § 404.1527(d); SSR 96-2p, 1996 WL 374188, at *1-2. The ALJ "will not give any special significance to the source of an opinion" regarding whether a person is disabled or unable to work, whether an impairment meets or equals a Listing, the individual's RFC, and the application of vocational factors. 20 C.F.R. § 404.1527(d)(3).

The regulations mandate that the ALJ provide "good reasons" for the weight assigned to the treating source's opinion in the written determination. 20 C.F.R. § 404.1527(c)(2). *See also Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007). Therefore, a decision denying benefits

> must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's opinion and the reasons for that weight.

SSR 96-2p, 1996 WL 374188, at *5 (1996). *See also Rogers*, 486 F.3d at 242. For example, an ALJ may properly reject a treating source opinion if it lacks supporting objective evidence. *Revels v. Sec. of Health & Human Servs*, 882 F. Supp. 637, 640-41 (E.D. Mich. 1994), *aff'd*, 51 F.3d 273, 1995 WL 138930, at *1 (6th Cir. 1995) (unpublished table decision).

An ALJ must analyze the credibility of the claimant, considering the claimant's statements about pain or other symptoms with the rest of the relevant evidence in the record and factors outlined in Social Security Ruling 96-7p. Credibility determinations regarding a claimant's subjective complaints rest with the ALJ. *See Siterlet v. Sec'y of Health & Human*

13

*Servs.*, 823 F.2d 918, 920 (6th Cir. 1987). Generally, an ALJ's credibility assessment can be disturbed only for a "compelling reason." *Sims v. Comm'r of Soc. Sec.*, No. 09-5773, 2011 WL 180789, at *4 (6th Cir. Jan. 19, 2011) (citing *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001)); *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004).

The Social Security regulations establish a two-step process for evaluating subjective symptoms, including pain. 20 C.F.R. § 404.1529; SSR 96-7p, 1996 WL 374186, at *2. The ALJ evaluates complaints of disabling pain by confirming that objective medical evidence of the underlying condition exists. The ALJ then determines whether that condition could reasonably be expected to produce the alleged pain or whether other objective evidence verifies the severity of the pain. *See* 20 C.F.R. § 404.1529; SSR 96-7p, 1996 WL 374186, at *2; *Stanley v. Sec'y of Health & Human Servs.*, 39 F.3d 115, 117 (6th Cir. 1994). The ALJ ascertains the extent of the work-related limitations by determining the intensity, persistence, and limiting effects of the claimant's symptoms. SSR 96-7p, 1996 WL 374186, at *2.

While "objective evidence of the pain itself" is not required, *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986) (quotation omitted), a claimant's description of his physical or mental impairments alone is "not enough to establish the existence of a physical or mental impairment," 20 C.F.R. § 404.1528(a). Nonetheless, the ALJ may not disregard the claimant's subjective complaints about the severity and persistence of the pain simply because they lack substantiating objective evidence. SSR 96-7p, 1996 WL 374186, at *1. Instead, the absence of objective confirming evidence forces the ALJ to consider the following factors:

(i)     [D]aily activities;

14

    (ii)    The location, duration, frequency, and intensity of . . . pain;

    (iii)   Precipitating and aggravating factors;

    (iv)   The type, dosage, effectiveness, and side effects of any medication .
           . . taken to alleviate . . . pain or other symptoms;

    (v)    Treatment, other than medication, . . . received for relief of . . . pain;

    (vi)   Any measures . . . used to relieve . . . pain.

20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). *See also Felisky v. Bowen*, 35 F.3d 1027, 1039-40 (6th Cir. 1994); SSR 96-7p, 1996 WL 374186, at *3. Furthermore, the claimant's work history and the consistency of his or her subjective statements are also relevant. 20 C.F.R. § 404.1527(c); SSR 96-7p, 1996 WL 374186, at *5.

The claimant must provide evidence establishing her RFC. The statute lays the groundwork for this, stating, "An individual shall not be considered to be under a disability unless he [or she] furnishes such medical and other evidence of the existence thereof as the Secretary may require." 42 U.S.C. § 423(d)(5)(A). *See also Bowen*, 482 U.S. at 146 n.5. The RFC "is the most he [or she] can still do despite his [or her] limitations," and is measured using "all the relevant evidence in [the] case record." 20 C.F.R. § 404.1545(a)(2). A hypothetical question to the VE is valid if it includes all credible limitations developed prior to Step Five. *Casey v. Sec. of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993); *Donald v. Comm'r of Soc. Sec.*, No. 08-14784-BC, 2009 WL 4730453, at *7 (E.D. Mich. Dec. 9, 2009).

    **G.**    **Analysis**

Pryor argues that the ALJ committed reversible error in the following ways: (1) failing to ask the VE about Pryor's need to participate in physical therapy and how that activity would

conflict with competitive work; (2) erroneously concluding that Pryor's ability to perform personal care activities constituted substantial gainful activity; and (3) failing to resolve conflicts between the VE's testimony and the Dictionary of Occupational Titles ("DOT"). These arguments will be addressed in turn.

### 1.    *The ALJ Did Not Err by Failing to Ask the VE About Physical Therapy*

Pryor first argues that the ALJ erred by failing to ask the VE whether his need to attend physical therapy three times weekly for two to three hours per session would preclude his completion of competitive work. (Doc. 13 at 7-8). The Court recognizes that physical therapy appointments could conceivably conflict with one's work in a manner that would render competitive employment impossible. However, Pryor has failed to set forth any facts or medical opinions which demonstrate that he requires physical therapy on a rigid schedule that would conflict with his ability to work. Pryor has not established any reason to think that he is unable to attend physical therapy sessions after work, on the weekends, during lunch, or on some other schedule. The claimant is tasked with providing evidence in support of his alleged disability. *See* 20 C.F .R. § 404.1512(a), (c); *Her v. Apfel*, 203 F.3d 388, 391 (6th Cir. 1999). The Court cannot, on the scant evidence presented, simply assume that Pryor's access to therapy is so limited that he could not attend to both a competitive work schedule and his therapy sessions. *See Brown v. Astrue*, No. 08-4026-CV-C-NKL-SSA, 2008 WL 4151613, at *2 (W.D. Mo. Sept. 2, 2008) (affirming an ALJ's decision where "nothing in the record indicated . . . [the claimant] could not arrange her medical appointments around a work schedule."); *see also Barnett v. Apfel*, 231 F.3d 687, 691 (10th Cir. 2000) (holding that courts need not assume that a doctor's appointment would consume an entire day); *Rood v. Colvin*,

16

No. 12-2595-SAC, 2014 WL 172131, at *4 (D. Kan. Jan. 15, 2014) (affirming the Commissioner where a doctor recommended continued psychiatric therapy, but the ALJ declined to include that limitation in the RFC, because there was no indication that the therapy sessions must "occur during the workday or with such frequency as to constitute a work-related limitation."). This conclusion is further bolstered by the fact that Pryor was able to simultaneously take three college classes, work twenty to thirty hours per week, and attend physical therapy, which the ALJ properly used to support his decision. (Tr. 17, 29, 42, 55). The ALJ thus did not err by failing to include a limitation regarding Pryor's need to attend physical therapy in his questions to the VE.

### 2. *The ALJ Did Not Conflate Substantial Gainful Activity With Personal Care*

Pryor next "takes further exception to the ALJ's conclusion that he can take care of his own personal needs because such activities such as taking care of yourself, household; [sic] tasks, [and] attending school are generally not considered to constitute substantial gainful activity." (Doc. 13 at 8). This argument is not entirely clear, but it appears that Pryor is asserting either that the ALJ erroneously conflated Pryor's ability to take care of his personal affairs with substantial gainful activity, or otherwise inferred from Pryor's ability to take care of his personal affairs that he could complete substantial gainful activity. Even when charitably interpreted, this argument finds no basis in law or the ALJ's decision. "Substantial gainful activity is defined as work activity which involves doing significant physical and mental activities that are performed for pay or profit." *Brown v. Com'r of Soc. Sec.*, 238 F.3d 419 (6th Cir. 2000) (citing 20 C.F.R. § 404.1572(a), (b)). Taking care of one's hygiene, chores, and

17

attending school are generally not activities performed for profit, and nowhere in his decision does the ALJ conflate these concepts. Indeed, the ALJ references Pryor's self-care and schooling only to support his findings that "the claimant has described daily activities, which are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations," and thus Pryor's statements regarding his symptoms "are not entirely credible." (Tr. 16-17). *See Blacha v. Sec'y of Health & Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990) (finding that the ALJ may consider activities of daily living in evaluating complaints of disabling pain). The ALJ thus did not conflate Pryor's ability to attend to his hygiene, household tasks, and schooling with substantial gainful activity, nor did he find that Pryor was able to complete substantial gainful activity because he is able to complete those aforementioned tasks, but rather properly found that Pryor's activities undercut his credibility with regard to his claims of disabling pain.

### 3. *The ALJ Did Not Commit Reversible Error by Failing to Resolve Conflicts Between the VE's Testimony and the DOT*

Plaintiff argues that the VE's testimony was in conflict with the DOT as to the cashier position. (Doc. 13 at ID 360.) Counsel had an opportunity to inquire into the specific requirements of the jobs listed by the VE. However, counsel did not identify any conflicts that he now raises. This alone is fatal to his argument. *See Aho v. Comm'r of Soc. Sec.*, 2011 WL 3511518, at *14 (D. Mass. Aug. 10, 2011) (citing *Donahue v. Barnhart*, 279 F.3d 441, 447 (7th Cir. 2002) ("Raising a discrepancy only after the hearing, as Donahue's lawyer did, is too late.")). In addition, "[n]othing in SSR 00-4p places an affirmative duty on the ALJ to conduct an independent investigation into the testimony of witnesses to determine if they are correct."

*Martin v. Comm'r of Soc. Sec.*, 179 F. App'x 369, 374 (6th Cir. 2006). Therefore, I suggest that the ALJ was not under any obligation to inquire further into the accuracy of the VE's testimony beyond asking whether the VE's testimony was consistent with the DOT and receiving the VE's response that it was. *See Ledford v. Astrue*, 311 F. App'x 746, 757 (6th Cir. 2008) ("Nothing in the applicable Social Security regulations requires an administrative law judge to conduct his or her own investigation into the testimony of a vocational expert to determine its accuracy"). I therefore suggest that ALJ Armstrong did not commit any error undermining the substantial evidence that supports the decision.

I further suggest that even assuming, *arguendo*, that the ALJ had an obligation to inquire further into the classification of the cashier jobs challenged by Plaintiff, the VE's testimony regarding the other jobs, food checker and auction clerk, remains unchallenged and would, by itself, provide substantial evidence for the ALJ's conclusion that Plaintiff was not disabled. *See Martin v. Comm'r of Soc. Sec.*, 170 F. App'x 369, 374 (6th Cir. 2006) (noting that the ALJ had no affirmative duty to investigate whether VE was correct where the plaintiff did not bring any conflict to his attention and finding substantial evidence satisfied where, "even if the two positions about which there were inconsistencies had been excluded, the ALJ still could have found that [the plaintiff] could perform the third position").

Finally, even if the merits of Pryor's argument are addressed, the result is the same. Pryor argues that "there was no discussion related to the check cashier position, which according to the DOT required 6 months training, and is classified as semi-skilled." (Doc. 13 at 8). Pryor seems to argue that the check cashiering position would have a specific vocational

preparation ("SVP")[1] of either four or five, thus requiring between three months and one year of experience to develop the skills necessary to perform that work. Check cashiering has a SVP of three, thus the skills necessary to perform that position can be developed in one to three months. *See* DOT 211.462-026; DOT, Appendix C, 1991 WL 688702 (4th ed.1991). Pryor is thus incorrect in asserting that the check cashiering position would require six months training, and the ALJ did not err by failing to address this incorrect SVP assessment.

However, Pryor's argument does touch on a real discrepancy between the VE's testimony and the ALJ's decision. The VE seems to have found that Pryor could perform work in several cashiering positions because he developed those necessary skills while working as a cashier between May and August of 2009. (Tr. 48, 175, 177). In his decision, the ALJ correctly found that Pryor had no "past relevant work" because his past work "was not performed at substantial gainful activity levels" (Tr. 18), but erroneously concluded that "[t]ransferability of job skills is not an issue because the claimant does not have past relevant work." (*Id.*). As noted in the Commissioner's brief (Doc. 14 at 12-14), the transferability of job skills is highly relevant to this inquiry because the VE noted that each of the jobs which he found Pryor could perform is reliant upon his transferrable cashiering skills. (Tr. 48). The ALJ similarly erred by finding that the cashiering positions at issue are part of the "unskilled sedentary occupational base," whereas in reality these positions are considered semi-skilled. (Tr. 19; *Simpson v. Colvin*, No. 3:11-0481, 2013 WL 4456383, at *16 (M.D. Tenn. Aug. 16, 2013) (noting that, pursuant to the DOT, cashiering positions are semi-skilled).

---

[1] SVP is "the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation." DOT, Appendix C (4th ed. 1991).

20

Despite these errors, remand is not appropriate. Nothing in the record indicates that the VE's testimony was faulty. Jobs with a SVP rating of three require between one and three months to learn. *See* DOT, Appendix C, 1991 WL 688702 (4th ed.1991). Pryor reported that he worked as a cashier for four months, a length of time more than sufficient to develop transferable cashiering skills (Tr. 161), and the VE explicitly made this finding in his testimony (Tr. 48). Moreover, Pryor described his cashiering position by reference to the use of a cash register. (Tr. 177).

Further, the ALJ clearly relied upon that testimony in formulating his decision, because he both referenced the VE's findings in the past relevant work analysis (Tr. 17), and because he determined that Pryor can complete work that exists in significant numbers in the national economy by referencing the same positions which the VE testified that a worker with Pryor's limitations could perform: check cashier, food checker, and auction clerk (Tr. 19). The error here is one of misstatement rather than faulty analysis or insufficient process. The ALJ did not find that Pryor lacked transferable skills, but instead mistakenly found that Pryor's transferable skills were not relevant. The sole purpose of remand would be for the ALJ to properly find that Pryor's cashiering skill is transferable, a finding the ALJ already implicitly made in his decision by adopting the VE's testimony. Remanding this case would thus be an "idle and useless formality," and is inappropriate. *N.L.R.B. v. Wyman-Gordon Co.*, 394 U.S. 759, 766 (1969).

21

**H.     Conclusion**

For the reasons stated above, the Court **RECOMMENDS** that Pryor's Motion for Summary Judgment (Doc. 13) be **DENIED**, the Commissioner's Motion (Doc. 14) be **GRANTED**, and that this case be **AFFIRMED**.

**III.    <u>REVIEW</u>**

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2). *See also* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P.

22

72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: August 21, 2015                    S/ PATRICIA T. MORRIS
                                         Patricia T. Morris
                                         United States Magistrate Judge


### CERTIFICATION

I hereby certify that the foregoing document was electronically filed this date through the Court's CM/ECF system which delivers a copy to all counsel of record.

Date: August 21, 2015                    By s/Kristen Krawczyk
                                         Case Manager to Magistrate Judge Morris

23